The next case for argument is United States v. Knox. It is docket 256011. Counsel, please proceed when you're ready. Thank you, Your Honor, and may it please the Court. My name is John Bolin of the firm of Bolin and Shaw, appearing on behalf of defendant and appellant Mr. Antonio Knox. Now, in writing the affidavit that supported the search warrant in this case, Detective Wooten really only knew that Mr. Knox's car was either shot at or shot from in this shooting between two cars. He didn't know whether Mr. Knox was in the car. None of the evidence could tell him. He didn't know whether Mr. Knox, if he was in the car, was the driver or passenger, and he didn't know whether Mr. Knox was the shooter. So our contention is that Detective Wooten made this search warrant to be issued by the Court in five ways. The first way was that he claimed multiple witnesses had ID'd the vehicle, the Chevy Avalanche, that turned out to be Mr. Knox's vehicle. But in reality, only one witness had said that they had seen a Chevy Avalanche that day. Well, didn't the district court look at that and say that although one witness was speaking, there was another witness standing there and affirming through body language and not objecting to anything? No, Your Honor. There were three witnesses involved. One officer spoke to one- I'm not talking about the people who said shooting at the house. I'm focusing on whether this statement could be perceived as being accurate. No, it could not because there were three witnesses. One officer talked to one witness who said Chevy Avalanche. A different officer talked to two witnesses, one of whom was silent and the other one who told them about the shooting, but that witness did not mention the Chevy Avalanche. What difference does it make? You've got to test for the neutral magistrate, whether there's a fair probability that evidence might be found, and if you have one witness who tells the offer this as opposed to witness is, why does it matter? Your Honor, that bolsters the affiant's position on the matter. If we took it out, would it make any difference in whether there was enough to issue the warrant? I believe that all five of these embellishments taken together are the reason why it went from not probable cause to search Mr. Knox's house to the magistrate judge issuing the warrant. Do you contend that any of them singly suffice or it's just a totality? It's a totality, Your Honor. Yes, because there are several things here that were embellished and it takes the entire picture from a picture where the police only know his car was involved and they don't know anything more about his involvement in the shooting. You're saying now there are multiple witnesses IDing his vehicle, that he was speeding, which wasn't established, that there were gunshots from both vehicles. Do we require on speeding that you have a radar gun to determine someone's speeding? I mean, we don't even require a police officer to say a car was speeding. Yeah, in some circumstances, it's easy to tell. In this case, the officer testified that it was speeding up. He heard engine revving and that's what he knew, but he didn't say speeding up in the affidavit. He said speeding. He also said that gunshots were coming from the cars, plural, when he didn't know whether it was one or the other or both cars from which the shooting occurred. And he completely omitted the fact that casings found at the scene suggested that only the passenger and not the driver could have been the shooter, which suggests if this is Mr. Knox's vehicle, the most likely scenario is that he is driving and not a passenger in his own vehicle and a passenger shooting suggests he's not the shooter. Now, all this matters because we're not asking whether there's probable cause to believe that Mr. Knox committed a crime here. We're asking whether there's probable cause to believe that evidence of that crime is going to be found in his personal residence. Well, do you need probable cause? I mean, you need probable cause, but the test is whether there's a fair probability that contraband evidence of a crime will be found in a particular place, right? That's the test. Yes, Your Honor. And so here, there wasn't a fair probability that the guns or ammunition used in the shooting would be found at his home. Now, there may have been a fair probability that some evidence of the crime could be found in his vehicle, such as maybe a cartridge casing, a hole in the vehicle from the other car shooting it, other kinds of evidence that's similar to that. But going all the way to his residence, there was no probable cause to believe that evidence of the shooting would be there. Where would you expect the firearm to be? Under the car seat, that's a possibility. Probably not on the dashboard, but most likely the person's going to take the firearm inside the house, right? Just as a matter of common sense and odds. Your Honor, it could be either way, but that would be the shooter. And we didn't have enough evidence to get to a fair probability that Mr. Knox was the shooter. All we have is that his car was involved. And the trial court, that's how it made its mistake. The government repeats that mistake here in the answer brief, page 27, quoting the court saying, well, if he's driving the car that you're using for a drive-by, isn't there probable cause to believe a crime has been committed? And that's not the standard at issue here. We have to believe that evidence of this crime would be at Mr. Knox's house. And the Dalton case, for example, shows that where you can reasonably believe that that defendant was in possession of the weapon, then you could believe that he took it into his house, just as Judge Phillips just mentioned. But we don't have enough to believe Mr. Knox was actually in possession of the weapon that was fired that day. And in fact, the two firearms that law enforcement found in his house when they performed the search were not linked to the shooting. And so for all those reasons, I believe... Is that relevant to our analysis here? I mean, it's not something the magistrate would know. That's true. And so it's not something that the magistrate would have decided, and this court wouldn't take that into account in deciding whether the district court made a mistake in this case. But in hindsight, it was correct that Mr. Knox did not have evidence of the shooting in his house. And I believe that there was not probable cause to believe that there would be. On the Dalton case, because it was discussed in the briefs, there the probable cause was found because the defendant's car, the officers observed a gun in defendant's car. And there was testimony from the officers saying, well, if somebody has guns in their car, they're likely also to have firearms in their house. But importantly in that case, probable cause disappeared once the officers knew that someone else had been driving the car that day. And so they didn't have the inference anymore that the defendant was in possession of the firearm in the car. And so, of course, the next chain in logic was also eviscerated, which is that someone who has a firearm in their car would also have it in their house. Now what matters there is possession, because I think the government would say, well, we know a firearm was in Mr. Knox's car if his car was used in the shooting. But what mattered in Dalton was possession, because once they found out that the defendant was not the one possessing the car, and therefore also likely the gun. But here we don't have any information that Mr. Knox was not in possession of the car at the time of the shooting. You're right. We don't know one way or the other whether he was possessing the car. Right. And in Dalton, it wasn't they didn't know one way or the other. It was they knew he didn't have the car at that time. Yes, that is correct, Your Honor. Unless there are no further questions on that topic, I'd touch briefly on our Second Amendment argument. I understand the Court's decision in Vincent after Rahimi was to stick with its prior precedent and to follow the dictum of the United States Supreme Court on whether non-violent felons, whether it is a violation of the Second Amendment to have the prohibition of owning firearms for non-violent felons. And on that point, I would just say I understand that this panel is bound by the prior decision of a different panel, but the Court has never undertaken the historical analysis required by the Supreme Court through Heller and Bruin and Rahimi. And so I think it is incumbent on the Court, now that the law has undergone a sea change from the original law on which this Court decided that issue under the Bayer case, that it reassessed the question under the new set of rules. You know, the Bayer case was decided back when this Court was holding, that the Second Amendment only protected the right of folks in a well-regulated militia to possess firearms. That all changed, obviously, a very long time ago, and the Court has not really readdressed that issue. The Court has only said, we're going with the Supreme Court's dictum that Heller did not alter the felon in possession statute, which has been repeated by the Supreme Court since then. We have a case before the Supreme Court right now on this issue, at least with regard to marijuana users. Should we abate and wait for that? That would be, I think that would be a prudent choice for the Court. Yes, because I think that Mr. Knox qualifies. I know that the government will contend that he does not qualify based on other circuits that is, that say drug crimes, for example, are a danger to the community and therefore, under the historical analysis, may have been regulated. I don't think that's true. There are a couple of possession with intent to distribute charges on Mr. Knox's record, and there is one burglary charge, but it specifically says in the pre-sentence investigation report that that was based on a stealth, stealth or fraud, and not breaking and entering or anything else that could be conceived of as a violent. And I think the question to be answered is violence as opposed to the sort of loose danger to the community, for example, that drug distribution presents. If there are no further questions, I'll reserve my time. Thank you. Good morning, Your Honors, and may it please the Court. My name is Stephen Hoke, and I'll be arguing on behalf of the United States. This Court should affirm the judgment in the sentence of the District Court in this matter. As to the first issue regarding the suppression motion, the Court can affirm in three separate ways. First, by finding that the affidavit contained no misstatements or omissions. Second, even if there were misstatements or omissions, they were not intentional or the result of recklessness. And third, to the extent there were any misstatements or omissions, none were material to the legal effect of the warrant. As to the second issue, Mr. Knox's argument is foreclosed by binding precedent. Now there were a line of questions regarding the statement from Detective Wooten regarding witnesses stating people in a white Chevy Avalanche were shooting in random directions. And I think what's important to distinguish is that that sentence can really be characterized as background or context for what's happening here. That was not the only basis for the identification of Mr. Knox's vehicle. The way that Mr. Knox's vehicle was identified was based on surveillance video from a nearby church and continuing to investigate this area and identifying that avalanche on multiple occasions based on some of its distinct features. So as to the statement itself, it would certainly have no legal effect on the legality of the warrant, even if this Court were to find that it's an accurate statement. But at bottom, the District Court below found, quote, that the facts attributed to the witnesses were accurately stated in the affidavit. That's volume three of the record at page 41. Now certainly, as in any instance, as with any warrant, with the benefit of hindsight, can every warrant be more precise? Absolutely. Could this sentence have been reworded, broken down, better articulated? Yes, but that does not make it inaccurate. I want to also discuss the location of the cartridge casings, and there was quite a bit of discussion about that within the, within Mr. Knox's brief. I think it's important here to review the record and note or acknowledge the fact that when these vehicles stop at the stop sign for the second time, or not for the second time, when they stop at the stop sign, when they're seen for the first time, there's a volley of shots. And Detective Wooten was specifically asked about that volley of shots and what he took from that volley of shots. And he stated, quote, based off the video and not seeing any muzzle flashes on the passenger side, my belief was that the gunshots came from the driver's side. That's from volume one of the record, pages 474 to 475. So that's his belief. There was no, if he was putting in the affidavit that the shots came from the passenger side, that would have been inaccurate. He didn't specify what side they're coming out of because he can't tell. Some of the evidence, sure, points to maybe they're coming out of the passenger side at one point. Other evidence points to the fact that they're coming out of the driver's side. So there's no reason to delineate at that point any specifics regarding where these casings are being located. And your honors, unless there are any other questions about the first issue, I think I've addressed most of what, most of your honor's questions as to Mr. Knox's counsel regarding the first issue. I'll move on to the second issue, but that is just that Mr. Knox's argument is foreclosed by binding precedent in this matter. And with that, I just ask that the court affirm the judgment and sentence of the district court. All right. Thank you, counsel. Thank you. In response, I would say that Detective Wooten didn't mention anything about the casings one way or the other, and there was certainly evidence pointing toward the passenger side. If there are no further questions, then we would ask that the court reverse and remand. Thank you. Thank you both for your helpful arguments. The case is submitted. Counselor excused.